HOLLINS (DURAND v.). See Case No. 4,-186.

HOLLINSBERRY (UNITED STATES v.). See Case No. 15,380.

---

## Case No. 6,621.

### In re HOLLIS.

### In re KENNEY et al.

[3 N. B. R. 309 (Quarto, 82).] [1]

District Court, D. Massachusetts. 1869.

COMMERCIAL PAPER—STOPPAGE OF PAYMENT—ACTS OF BANKRUPTCY.

1. The stopping of payment of commercial paper, mentioned in section 39 of the bankrupt act [of 1867 (14 Stat. 536)], must be fraudulent, and must continue for fourteen days in order to be an act of bankruptcy.

[Cited in Re Hercules Mut. Life Assur. Soc., Case No. 6,402; M. &. M. Nat. Bank v. Brady's Bend Iron Co., Id. 9,018.]

[See Baldwin v. Wilder, Case No. 806; In re Ballard, Id. 816.]

2. Such suspension or non-resumption is fraudulent (supposing the liability to be undisputed) when it is done purposely and not by accident or mistake.

[Cited in Re Hercules Mut. Life Assur. Soc., Case No. 6,402.]

3. Semble. "Commercial paper" in this section means paper, which, by the law governing the contract, has the ordinary qualities and incidents of negotiable paper in the sense of the law merchant.

[Cited in Re Chandler, Case No. 2,591.]

[In bankruptcy. In the matter of John A. Hollis and of J. E. Kenney and others.]

LOWELL, District Judge. By section 39 of the statute, a banker, merchant, or trader, who has fraudulently stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days, shall be

---

[1] [Reprinted by permission.]

deemed to have committed an act of bankruptcy. Some difficulty has been found in construing this clause. A fraudulent stopping of payment is not an act heretofore known or defined, and it is not easy of definition. It is easy to see that a merchant or trader will never suffer his negotiable paper to be protested so long as he can provide for its payment; and it is therefore a ready and safe test of insolvency if he stops payment of such paper. Indeed, it is the popular way of expressing the fact of a trader's insolvency, that his paper has "gone to protest." But there is nothing fraudulent in the ordinary sense in such refusal .caused by inability. On the contrary, under the bankrupt law it is the duty of a trader to stop payment when he finds that he cannot pay every creditor in full. It may be said, with some plausibility, that if a solvent trader stops payment, he commits a fraud on his creditors. But solvent men do not stop payment; or if they do, there is a more convenient and less expensive mode of enforcing their obligations, than by a resort to the court of bankruptcy.

Pressed by these considerations, some courts have rejected the word "fraudulently" altogether. Others have confined its application to the stopping of payment; and they read the statute, that if a merchant fraudulently stops payment, or if, without fraud, he suspends payment and does not resume it for fourteen days, he has become bankrupt. The more natural construction of the statute appears to me to be with those who hold that the word qualifies the whole clause, and that the suspension and non-resumption for fourteen days is explanatory of the meaning of a "stopping of payment;" namely, one that shall have lasted for that time.

As to the fraud, a mere oversight, or a vis major, or a fraud practiced on the merchant himself, or an honest defense to the particular paper refused, if these reasons or such as these occasion the refusal to pay, would take the case out of the statute. And this would be so, though the word "fraudulently" were omitted from the law; because such an accident or refusal could not fairly be called a stopping of payment. Still, congress might well insert the qualification for greater caution. My construction is, that "fraudulently" means knowingly, and without just excuse applicable to the paper itself.

Probably the fourteen days were given for the very purpose of guarding against accidents and mistakes; and I do not mean to say that when the mistake is discovered it is any longer an excuse. But if it is not found out within the fourteen days, perhaps the petition would be premature, or at any rate ought to be dismissed on payment of the suspended debt.

The differences of opinion which have been expressed by different judges, are, after all, of very little importance. Those judges who give the word "fraudulently" its greatest effect hold that for a solvent trader to suspend payment and not resume it for fourteen days, without some such excuse as I have referred to, is a fraud; and that, for an insolvent trader, who has suspended, not to go into bankruptcy within the same time, is a fraud; and as all traders must be either solvent or insolvent, this in effect makes the voluntary and unexcused suspension and non-resumption to be an act of bankruptcy without any evidence of fraud in the ordinary sense. And, on the other hand, those judges who reject the word, would not hold that every suspension and non-resumption is necessarily an act of bankruptcy; as if it be, for instance, a refusal to pay a note to which the trader believes he has a good defense. So that the practical result of all the decisions is substantially the same, except that in one view, there might be a stopping of payment for less than fourteen days, which would be an act of bankruptcy. But I think it will be some time before any creditor finds himself able to cover and prove any such fraud. None such has been either defined or proved in any reported case. If there be anything done which can defeat, delay, or hinder creditors, it is provided for in other parts of the section, and such an act would be itself an act of bankruptcy without any stopping of payment. But it must be distinctly averred and proved as a fraud and not as a mere incident of non-payment.

What is "commercial paper" is not an important question in this case. It has been sometimes said that only such notes or acceptances as the banker, merchant, or trader actually gives in the ordinary and legitimate course of his trade, are in that class. Another opinion is that all paper that, by the law governing the contract, has, in the hands of its actual holders, the qualities and incidents of ordinary negotiable paper in the sense of the law-merchant, is within the definition, whether it was really given by the trader in the usual course of his trade or not. And this is perhaps the better opinion. But the paper here confessedly comes within both definitions.